UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MUHAMMED PEREZ BEY
*Ex. Rel. Ernesto Williams*,

                      Plaintiff,

v.

NYC NEW YORK POLICE DEPARTMENT – 81ST PRECINCT, OFFICER JOB BELLEVUE, OFFICER SAJJAD ASAR, OFFICER JOSEPH SFERRAZZA, OFFICER HENRIQUEZ DENNIS, OFFICER MACERO RYAN, OFFICER PENA KEVIN, OFFICER JUSTIN THOMAS, JUDGE PHYLLIS CHU, and ERIC GONZALEZ,

                      Defendants.

**MEMORANDUM AND ORDER**
23-cv-04911 (LDH) (JAM)

---

LASHANN DEARCY HALL, United States District Judge:

Muhammed Perez Bey[1] ("Plaintiff"), proceeding pro se, commenced this action against defendants New York Police Department ("NYPD"), NYPD Officers Job Bellevue, Sajjad Asar, Joseph Sferrazza, Henriquez Dennis, Macero Ryan, Pena Kevin, and Justin Thomas ("NYPD Defendants"), Kings County District Attorney Eric Gonzalez, and Kings County Supreme Court Justice Phyllis Chu, asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for the deprivation of his right to bear arms in violation of the Second Amendment, false arrest and malicious prosecution in violation of the Fourth Amendment, and deprivation of due process in violation of the Fifth Amendment. The NYPD Defendants, along with Defendant Gonzalez,

---

[1] Plaintiff is formerly known as Ernesto Perez Williams. (*See* Compl. at 55–56, Order Granting Leave to Change Name, dated Sept. 30, 2021, ECF No. 7.) This name is reflected in Plaintiff's criminal proceedings.

1

move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims asserted against them in the complaint.[2]

## BACKGROUND[3]

On April 18, 2022, Plaintiff and three other individuals stopped at a pizza shop on the corner of Broadway and Lafayette Avenue in Brooklyn, New York. (Compl. at 12, ECF No. 7.) At the time, Plaintiff was carrying an unconcealed firearm on his right hip. (*See id.*) As Plaintiff exited the pizza shop, he was approached by Defendants Bellevue, Sferrazza, and Ryan. (*Id.* at 12, 14.)[4] Defendant Bellevue asked Plaintiff who he was, to which Plaintiff responded that he was a Public Minister and presented the officers with documents describing his position in the Public Minister Law Administration, a private organization that purports to operate outside the jurisdiction of the government.[5] (*Id.* 14, 17, 19–21.) Defendant Bellevue then asked Plaintiff

---

[2] On November 6, 2023, the Court directed Plaintiff to show cause why the claims against Justice Chu should not be dismissed for lack of subject matter jurisdiction under the doctrine of judicial immunity. Plaintiff failed to do so. As such, on February 5, 2025, the Court dismissed the claims against Justice Chu sua sponte. *See* Text Order dated Feb. 5, 2025 (*citing Jones v. New York*, No. 21-CV-3776, 2023 WL 2734793, at *5 (E.D.N.Y. Mar. 31, 2023) (dismissing claims against state judge because "[j]udges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority") (quoting *Caruso v. Zugibe*, 646 F. App'x 101, 105 (2d Cir. 2016))).

[3] The following facts taken from the complaint are assumed to be true for the purpose of this memorandum and order, unless otherwise stated. Generally, a court may not consider matters outside the pleadings on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, documents attached to the complaint or incorporated therein by reference are deemed part of the pleading and may be considered. *Id.* Moreover, "a document 'upon which [the complaint] solely relies and which is integral to the complaint may be considered' by the court in ruling on such a motion." *Id.* (quoting *Cortec Indus., Inc. v. Sun Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). Finally, matters of public record may be properly considered, *see Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide*, 369 F.3d 212, 217 (2d Cir. 2004), and the Court is permitted to reject those allegations that are contradicted by matters of public record, *see Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561, 574–75 (E.D.N.Y. 2008).

[4] Plaintiff attaches several documents to his complaint, including affidavits from two individuals with him at the time of his arrest: Raquel Brabham El (*see* Compl. at 14–15) and Samuel Randolph Hall *aka* Prodigy X El (*see* Compl. at 16–17), documents describing the Public Minister Law Administration (*see* Compl. at 18–24, 49–52), court orders and transcripts (*see* Compl. at 40–48, 55–57), among others. For ease of reference, the Court refers to the facts gleaned from these documents as allegations in the complaint.

[5] According to the complaint, the Public Minister Law Administration "are a group of private men and women who have come together to form an unincorporated private membership association to educate, assist, protect and defend the American people against foreign and domestic corporate crimes and police corruption." (*See* Compl. at 19.)

2

whether he had a permit authorizing him to carry the firearm in his possession. (*Id*. at 12.) Plaintiff replied that he did not have or need a permit to carry his firearm. (*Id*.) Defendant Bellevue and the other officers then removed Plaintiff's firearm and placed him under arrest. (*Id*.)

On April 25, 2022, while in custody, Plaintiff sent a purported petition for a writ of habeas corpus to the Kings County District Attorney's Office ("KCDAO"). (*See id*. at 9.) Plaintiff also filed several requests to Justice Chu, the justice presiding over his criminal proceeding, to relieve the attorney that had been provided for him by the Legal Aid Society and permit him to represent himself. (*See id*. at 10.) At a June 17, 2022 hearing, Justice Chu denied Plaintiff's requests to dismiss his attorney and to proceed pro se. (*Id*. at 44–48.) At that same hearing, Justice Chu directed the KCDAO to return any documents that they received directly from Plaintiff, unread and unopened, and to expunge those documents from their records. (*Id*. at 46–48.) When Plaintiff asked whether he was permitted to submit documents on his own behalf, Justice Chu advised Plaintiff that he should submit any documents to his attorney for her review, in order to protect Plaintiff's rights. (*Id*.) On January 16, 2024, Plaintiff was tried before a jury and convicted of Criminal Possession of a Weapon in the Second Degree. (Decl. John Schemitsch ("Schemitsch Decl."), Ex. B, ECF No. 46-2.)[6] Plaintiff was sentenced to two and a half to three years' incarceration. (*See* Pl.'s Opp'n to Mot. Dismiss ("Pl.'s Opp'n") at 8, ECF No. 47.)

---

[6] The Court may take judicial notice of matters of public record. *Blue Tree*, 369 F.3d at 217. The "prosecution of [an individual] is a matter of public record, of which [a court] take[s] judicial notice." *Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005); *Sanders v. Simonovic*, No. 19-CV-5525, 2021 WL 707060, at *4 (S.D.N.Y. Feb. 23, 2021) ("[O]n motions to dismiss, courts have taken judicial notice of criminal court certificates of disposition, as well as of other court filings, including guilty plea minutes, sentence and commitment forms, and true bills of indictment, if their authenticity is not challenged." (citations and quotations omitted)).

3

Prior to his criminal trial and sentencing, on June 29, 2023,[7] Plaintiff filed a complaint in this court seeking (1) to be released from Rikers Island Correctional Facility, (2) the dismissal of all charges against him,[8] (3) the criminal prosecution of the Defendants pursuant to 18 U.S.C. §§ 241 and 242,[9] and (4) $21 million in damages for the alleged constitutional violations. (Compl. at 6.)

## STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Iqbal*, 556 U.S. at 678. While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [c]ourt must merely determine whether the

---

[7] Plaintiff filed a corrected complaint on July 5, 2023. (*See* ECF No. 7.)

[8] By the time of the filing of the motion to dismiss on April 10, 2024, Plaintiff had already been tried, convicted, and sentenced. (*See* Schemitsch Decl., Ex. B; Pl.'s Opp'n at 8.) As such, his requests to be released from pretrial detention at Rikers Island Correctional Facility and for the charges against him to be dropped are moot. *See Yung v. Rikers Island Prison Warden of OBCC*, No. 24-CV-5747, 2024 WL 4708709, at *1 (E.D.N.Y. Oct. 7, 2024) ("Petitioner's [] application seeking his immediate release from Rikers Island is moot as he is, by his own admission, no longer detained on Rikers Island."). Moreover, to the extent that Plaintiff seeks habeas relief, the Court would not be able to grant such relief as "[a] petitioner seeking relief under 28 U.S.C. § 2241 must exhaust available state court remedies," and Plaintiff does not allege that he did so. *See id.* at *1 n.1 (quoting *York v. Shannon*, No. 22-CV-2663, 2022 WL 16715291, at *1 (E.D.N.Y. Nov. 4, 2022)).

[9] To the extent that Plaintiff's complaint can be read to assert claims pursuant to 18. U.S.C. §§ 241–42, these claims are dismissed because these criminal statutes do not provide for a private right of action. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) (holding that criminal statutes such as § 242 do not provide private causes of action).

4

complaint itself is legally sufficient, and in doing so, it is well settled that the [c]ourt must accept the factual allegations of the complaint as true." *Id.* (internal citation omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555)).

Nonetheless, a district court may dismiss a pro se action sua sponte, even if the plaintiff has paid the Court's filing fee, if it determines that the action is frivolous or that the Court lacks subject matter jurisdiction. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (affirming sua sponte dismissal of frivolous pro se complaint where pro se plaintiff had paid the required filing fee). An action is frivolous when "either (1) 'the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy;' or (2) 'the claim is based on an indisputably meritless legal theory.'" *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (quoting *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)). A finding of frivolousness is appropriate "when the facts

5

alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## DISCUSSION

### I.   Claims Against District Attorney Gonzalez

Plaintiff brings Section 1983 claims against Defendant Gonzalez, Kings County District Attorney, for unlawfully indicting him on "unconstitutional state laws," prosecuting charges against him that were "not supported by probable cause," and adhering to an order by Justice Chu not to respond to a purported writ of habeas corpus, or any other documents, sent by Plaintiff directly to the KCDAO. (*See* Compl. at 25–26.) Plaintiff contends that these actions amounted to malicious prosecution and a deprivation of due process. (*See id*.) Defendants argue that, to the extent Plaintiff raises claims against Defendant Gonzalez in either his official or individual capacity, Plaintiff's Section 1983 claims against Defendant Gonzalez are barred by both the Eleventh Amendment and the doctrine of prosecutorial immunity. (Defs.' Mem. in Supp. Mot. Dismiss ("Defs.' Mem.") at 9–11, ECF No. 46-1.) The Court agrees.

"[T]he capacities in which a state official is sued for damages under § 1983 establish parallel lines of privileges." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). That is, whether a state official is sued in their official or individual capacity determines which immunities the state official may invoke that would prohibit the claims brought against them. *Id*. If a state official is sued for damages in his official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Id.* (citing *Kentucky v. Graham,* 473 U.S. 159 (1985)). However, if the state official is sued for damages in his individual capacity, he may be entitled to

6

invoke absolute or qualified immunity. *Id*. Where the state official in question is a prosecutor, as is the case here, a plaintiff's Section 1983 claims may be barred by the doctrine of absolute prosecutorial immunity. *Id*.

Because the Eleventh Amendment bars suits against a state, but not against a municipality or local government, "[w]hen a defendant is sued in his official capacity, [courts] treat the suit as one against the 'entity of which an officer is an agent.'" *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (quoting *Kentucky*, 473 U.S. at 165–66). "[I]f a district attorney or an assistant district attorney acts as a prosecutor, []he is an agent of the State, and therefore immune from suit in [his] official capacity. *Id.* (citations omitted); *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied,* 488 U.S. 1014 (1989) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."). Thus, where a plaintiff's claims stem from a district attorney's "prosecutorial decisions over the course of the case," the Eleventh Amendment protects the prosecutor from liability for damages under Section 1983. *D'Alessandro*, 713 F. App'x at 8.

Here, Plaintiff's claims against Defendant Gonzalez arose from (1) the decision to indict and prosecute Plaintiff for violating New York Penal Law by carrying a firearm without a license and (2) the decision to adhere to a court order in a criminal proceeding directing the return of Plaintiff's purported habeas submissions. (Compl. at 9.) These decisions were made squarely within Defendant Gonzalez's capacity as a prosecutor in the course of Plaintiff's case. *See D'Alessandro*, 713 F. App'x at 8. As such, Defendant Gonzalez is immune from suit under the Eleventh Amendment.

This case is not unlike *D'Alessandro v. City of New York*. In *D'Alessandro*, the Second Circuit affirmed a district court's holding that the Eleventh Amendment barred Section 1983 claims against prosecutors that were based on the prosecutors' decisions to "prosecute plaintiff, seek and obtain a superseding indictment, investigate the complainant's claims, turn over grand jury minutes, and make specific arguments to the trial court, and [the district attorney's] decision to train or not train assistant district attorneys about recent precedent." 713 F. App'x 1. The court found that these acts were prosecutorial decisions made in the course of the defendants' capacities as prosecutors and, therefore, as agents of the state. *D'Alessandro*, 713 F. App'x at 8. The same outcome is warranted here.

Plaintiff's claims against Defendant Gonzalez fare no better if they were brought against Defendant Gonzalez in his individual capacity. Prosecutors receive absolute immunity from Section 1983 claims brought against them in their individual capacity "when they engage in 'advocatory conduct that is intimately associated with the judicial phase of the criminal process.'" *D'Alessandro*, 713 F. App'x at 5 (quoting *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012)). A prosecutor undoubtedly engages in advocatory conduct when they initiate and pursue a criminal prosecution and when they perform their litigation-related duties. *Id*. ("Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity—when she initiates and pursues a criminal prosecution."); *see also Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution . . . is immune from a civil suit for damages under § 1983'" (quoting *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976))); *Ying Jing Gan*, 996 F. 2d at 530 ("[T]he prosecutor's decisions with regard to whether or not to institute a prosecution and his

8

performance of his litigation-related duties are given the shield of absolute immunity."). A prosecutor acts within the scope of their litigation-related duties even if they, for example, "make[] false statements during judicial proceedings, knowingly use[] false testimony, deliberately withhold[] exculpatory evidence, engage[] in malicious prosecution, or attempt[] to intimidate an individual into accepting a guilty plea." *D'Alessandro*, 713 F. App'x at 5 (internal citations and quotations omitted). Against this legal backdrop, there can be no genuine dispute that Defendant Gonzalez's decisions to indict and prosecute Plaintiff, and to obey a court order to return the documents sent by Plaintiff to the KCDAO, are shielded from suit. Of course, a prosecutor is not shielded by prosecutorial immunity if they "proceed[] in the clear absence of all jurisdiction" or "act[] without any colorable claim of authority." *Shmueli*, 424 F.3d at 237 (quoting *Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir. 1987)). However, to defeat Defendant Gonzalez's absolute immunity from suit, Plaintiff must plausibly allege that Defendant Gonzalez was otherwise acting outside the scope of his jurisdiction. Plaintiff does not.[10]

For the forgoing reasons, Plaintiff's claims against Defendant Gonzalez must be dismissed.

## II.     Second Amendment Claim

The Second Amendment of the U.S. Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court recognized that the Second Amendment establishes an individual right to "keep and bear arms," however, it also made clear that this right "is not unlimited." *D.C. v. Heller*, 554 U.S. 570, 626 (2008). Indeed,

---

[10] To determine whether a prosecutor was acting outside the scope of their jurisdiction, as a matter of law, courts evaluate "whether the pertinent statutes may have authorized prosecution for the charged conduct." *Shmueli*, 424 F.3d at 237. Pursuant to New York Penal Law § 265.03(3), an individual may be charged with criminal possession of a weapon in the second degree if the individual possesses any loaded firearm outside of the individual's home or place of business. Plaintiff was charged with this very conduct, thus authorizing prosecution for said conduct. As such, Defendant Gonzalez acted within his jurisdiction in deciding to indict and prosecute Plaintiff for the offense and is, therefore, immune from Plaintiff's Section 1983 claim. *See Shmueli*, 424 F.3d at 237.

9

the right to keep and bear arms "[is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. Therefore, while broad prohibitions on the possession of firearms by law-abiding citizens are unconstitutional, states may still "establish restrictions and regulations on who, how, and where firearms can be possessed and carried." *Goldstein v. Hochul*, 680 F. Supp. 3d 370, 390 (S.D.N.Y. 2023) (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)).

New York law permits the possession of a firearm where an individual applies for and acquires the requisite license to do so. N.Y. Penal Law § 400.00 (establishing a licensing scheme for firearm possession), § 265.20 (exempting individuals who have been issued licenses pursuant to § 400.00 from certain restrictions on firearm possession). Carrying a firearm without a valid license is a violation of New York Penal Law. *See, e.g.*, N.Y. Penal Law §§ 265.01(1), 265.01-b, 265.02, 265.03, 265.04. Defendants argue that Plaintiff fails to state a claim for violation of his Second Amendment right because New York's licensing and regulatory laws restricting gun possession are consistent with the Second Amendment and the NYPD Defendants had probable cause to disarm and arrest Plaintiff for violating that law. The Court agrees.

Plaintiff alleges that the NYPD Defendants violated his Second Amendment right when they disarmed him and arrested him for possessing a firearm in public without a license. (Compl. at 12.) According to his own allegations, Plaintiff was carrying an unconcealed firearm on his hip when he encountered the officers outside of the pizza shop. (*See id*.) When asked by Defendant Bellevue whether he had a permit to carry the firearm in his possession, he responded that he did not have or need one. (*Id*.) The officers then proceeded to disarm Plaintiff and place him under arrest. (*Id*.) Because carrying a firearm without a license is a violation of New York law, Plaintiff's admission to the officers that he was carrying an unconcealed firearm in public

10

without a license provided the NYPD Defendants with sufficient probable cause to disarm and arrest Plaintiff for violating that law.[11]

Plaintiff contends that the New York law restricting the possession and carrying of firearms without a license is unconstitutional under the Second Amendment. (*See* Pl.'s Opp'n at 4.) Not so. Although the Supreme Court has found that certain requirements to obtain a license to possession or carry a firearm may be unconstitutional, it has made clear that it "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense" and that licensing regimes are "constitutionally permissible." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 79–80 (2022) (Kavanaugh, J. concurring). As such, restrictions on the possession and carrying of a firearm without any license under New York law do not violate the Second Amendment.

For the forgoing reasons, Plaintiff's Second Amendment claim must be dismissed.

### III.    False Arrest and Malicious Prosecution Claims

To sustain a claim for either false arrest or malicious prosecution, a plaintiff must sufficiently allege that the defendants lacked probable cause to arrest or prosecute him. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (holding that probable cause is a "complete

---

[11] To the extent that Plaintiff argues that the removal of his firearm in connection with his arrest violated his Second Amendment right, this argument also fails. "[C]ase law within this circuit indicates that 'the right to bear arms is not a right to hold some particular gun.'" *Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 401 (E.D.N.Y. 2017) (quoting *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 217 (S.D.N.Y. 2005)). Because the removal of his unlawfully carried firearm did not otherwise impact his ability to lawfully acquire firearms, it cannot serve as a basis for a claim that his Second Amendment rights were violated. *See, e.g.*, *Torcivia v. Suffolk Cnty., New York*, 409 F. Supp. 3d 19, 37 (E.D.N.Y. 2019), *aff'd,* 17 F.4th 342 (2d Cir. 2021) (dismissing Second Amendment claim where "Plaintiff currently lawfully possesses two firearms" and thus could not plausibly claim that his Second Amendment right was burdened.); *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 430 (S.D.N.Y. 2013) (dismissing Second Amendment claims where "there is no allegation that Defendants' actions have affected Plaintiff's ability to retain or acquire other firearms."); *McGuire v. Village of Tarrytown*, No. 8-cv-2049, 2011 WL 2623466, at *7 (S.D.N.Y. June 22, 2011) (holding that because "defendants did not prevent [plaintiff] from acquiring another weapon, they did not impede plaintiff's 'right to bear arms'").

defense" to false arrest claims); *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("The existence of probable cause is a complete defense to a claim of malicious prosecution in New York."). Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Fabrikant v. French*, 691 F.3d 193, 217 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). A plaintiff's conviction of the offense for which he was arrested or prosecuted serves as evidence that probable cause existed and, therefore, defeats a false arrest or malicious prosecution claim. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."); *Cameron v. Fogarty*, 806 F.2d 380, 388 (2d Cir. 1986) ("Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest."). Defendants argue that Plaintiff's claims for false arrest and malicious prosecution fail because Plaintiff fails to allege that there was a lack of probable cause and because Plaintiff's conviction for criminal possession of a firearm precludes these claims. The Court agrees.

Plaintiff alleges that he was carrying a firearm without a permit in a public place, that the firearm was unconcealed, and that he directly informed the officers just before they arrested him that he did not have or require a permit for the firearm in his possession. (Compl. at 12.) Because New York Penal law prohibits the possession and carrying of a firearm without a license, Plaintiff's own admission to the officers that he was carrying a firearm and did not have a license to do so warranted the officers in their belief that Plaintiff had committed an offense.

12

*See Fabrikant*, 691 F.3d 193, 21.  Moreover, Plaintiff's ultimate conviction of criminal possession of a weapon in the second degree defeats his claim for false arrest or malicious prosecution with respect to this charge.  *See Heck*, 512 U.S. at 484; *Cameron*, 806 F.2d at 388.

For the forgoing reasons, Plaintiff's false arrest and malicious prosecution claims must be dismissed.

## IV.    Due Process Claim

Plaintiff contends that Defendants Gonzalez and Chu violated his Fifth Amendment right to due process when Justice Chu denied his request to fire his attorney and represent himself, and when Defendant Gonzalez adhered to Justice Chu's order to return documents sent by Plaintiff without responding to them.  (Compl. at 9.)  As the Court notes above, Plaintiff's claims against Defendants Gonzalez and Chu are barred by the Eleventh Amendment, as well as judicial and prosecutorial immunity.

For the forgoing reasons, Plaintiff's Fifth Amendment due process claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's complaint is DISMISSED.

Generally, a court should not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)).  But a court has inherent power to dismiss without leave to amend or replead "where . . . the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988)

13

(citation omitted), or where amendment would otherwise be futile, *Hill v. Curcione*, 657 F. 3d 116, 123-24 (2d Cir. 2011). Because the Court concludes that Plaintiff's claims are frivolous, and that leave to amend would be futile, the Court declines to grant Plaintiff leave to amend his complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and in forma pauperis status is therefore denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment, mark this action closed, and mail a copy of this order to the pro se Plaintiff.

SO ORDERED.

Dated: Brooklyn, New York  
      March 28, 2025

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge